1  Timothy P. Harris, Pro Se'
2  4005 Cherokee Rose Ave.
3  North Las Vegas, NV. 89031
4  702-371-3658
5  extremeps1@cox.net
6

7  ## IN THE UNITED STATES DISTRICT COURT
8  ## FOR THE DISTRICT OF NEVADA

Timothy P. Harris, Pro Se'                           )
Plaintiff                                            )        Case No: 2:10-cv-01662-GMN-
                                                     )                          LRL
V.                                                   )        **Civil Rights Violation Complaint**
                                                     )        **Trial By Jury Demanded**
AMERICAN GENERAL FINANCIAL                           )
SERVICES,LLC                                         )
Defendant                                            )

9  ### MOTION IN OPPOSITION TO MOTION TO DISMISS
10
11      Comes now the Plaintiff Timothy Harris, and hereby submits his

12  opposition to the Defendant American General Motion to Dismiss

13  incorrectly identified in the Plaintiffs' complaint  as AMERICAN GENERAL

14  FINANCIAL SERVICES, LLC, and is now correctly identified as

15  AMERICAN GENERAL FINANCIAL SERVICES OF AMERICA, INC, from

16  here forward using their letters AGFSOA.

17      The Plaintiff brings this action against the Defendant as a result of

18  Defendant's American General violations of the Fair Credit Reporting Act

19  (FCRA) 15 U.S.C. § 1681and the Telephone Consumers Protection Act

20  (TCPA) 47 U.S.C. § 227 Public Law 102-243.

21      This case is not about any alleged monies, alleged monies owed, or

22  alleged accounts, or judgments but rather what Defendant American

23  General did or did not do when challenged under the FCRA. These laws

24  are geared directly at the provider of information to credit reporting

25  agencies and their failure to compliance.

26  It is what they are supposed to do when challenged in credit reporting
27  and not about accounts owed or claimed to be owed. Where is the term
28  "money" or debt in the FCRA? There exists, the word "debt collector,"
29  because any consumer, such as this Plaintiff, has the right to challenge the
30  "debt" collector and or providers of information such as the Defendant if
31  they are using the consumers credit report.

32  Defendant claims there is no private right of action under 15 U.S.C. §
33  1681s-2(a), which governs the duty of furnishers. The Plaintiff will clarify
34  the law from the FCRA.

35  § 602. Congressional findings and statement of purpose [15 U.S.C. §
36  1681]

37  (a) Accuracy and fairness of credit reporting. The Congress makes
38  the following findings:

39  (1) The banking system is dependent upon fair and accurate credit
40  reporting. Inaccurate credit reports directly impair the efficiency of the
41  banking system, and unfair credit reporting methods undermine the public
42  confidence which is essential to the continued functioning of the banking
43  system.

44  § 603. Definitions; rules of construction [15 U.S.C. § 1681a]

45  (a) Definitions and rules of construction set forth in this section are
46  applicable for the purposes of this title.

47  (b) The term "person" means any individual, partnership, corporation,
48  trust, estate, cooperative, association, government or governmental
49  subdivision or agency, or other entity.

50  (c) The term "consumer" means an individual.

51

52  617. Civil liability for negligent noncompliance [15 U.S.C. § 1681]

2

53   (a) In general. Any person who is negligent in failing to comply with
54 any requirement imposed under this title with respect to any consumer is
55 liable to that consumer in an amount equal to the sum of

56   (1) any actual damages sustained by the consumer as a result of the
57 failure; and

58   (2) in the case of any successful action to enforce any liability under
59 this section, the costs of the action together with reasonable attorney's fees
60 as determined by the court.

61   (b) Attorney's fees. On a finding by the court that an unsuccessful
62 pleading, motion, or other paper filed in connection with an action under
63 this section was filed in bad faith or for purposes of harassment, the court
64 shall award to the prevailing party attorney's fees reasonable in relation to
65 the work expended in responding to the pleading, motion, or other paper.

66   § 623. Responsibilities of furnishers of information to consumer
67 reporting agencies

68   [15 U.S.C. § 1681s-2]

69   (a) Duty of Furnishers of Information to Provide Accurate Information

70   (1) Prohibition

71   (A) Reporting information with actual knowledge of errors. A person
72 shall not furnish any information relating to a consumer to any consumer
73 reporting agency if the person knows or has reasonable cause to believe
74 that the information is inaccurate.

75   (B) Reporting information after notice and confirmation of errors. A
76 person shall not furnish information relating to a consumer to any consumer
77 reporting agency if

78      (i) the person has been notified by the consumer, at the address
79  specified by the person for such notices, that specific information is
80  inaccurate; and

81      (ii) the information is, in fact, inaccurate.

82      (C) No address requirement. A person who clearly and conspicuously
83  specifies to the consumer an address for notices referred to in
84  subparagraph (B) shall not be subject to subparagraph (A); however,
85  nothing in subparagraph (B) shall require a person to specify such an
86  address.

87      (D) Definition. For purposes of subparagraph (A), the term
88  "reasonable cause to believe that the information is inaccurate" means
89  having specific knowledge, other than solely allegations by the consumer,
90  that would cause a reasonable person to have substantial doubts about the
91  accuracy of the information.

92      (2) Duty to correct and update information. A person who

93      (A) regularly and in the ordinary course of business furnishes
94  information to one or more consumer reporting agencies about the person's
95  transactions or experiences with any consumer; and

96      (B) has furnished to a consumer reporting agency information that the
97  person determines is not complete or accurate, shall promptly notify the
98  consumer reporting agency of that determination and provide to the agency
99  any corrections to that information, or any additional information, that is
100  necessary to make the information provided by the person to the agency
101  complete and accurate, and shall not thereafter furnish to the agency any
102  of the information that remains not complete or accurate.

103      (3) Duty to provide notice of dispute. If the completeness or accuracy
104  of any information furnished by any person to any consumer reporting

4

105  agency is disputed to such person by a consumer, the person may not
106  furnish the information to any consumer reporting agency without notice
107  that such information is disputed by the consumer.

108         Case Law to Support private right of action under 15 U.S.C. § 1681s-
109  2(a), Dornhecker  ro. Ameritech Corp., 99 F. Supp. 2d 918 (N.D. Ill. 2000).

110         A U.S. district court held that the Fair Credit Reporting Act (FCRA),
111  15 U.S.C. 1681 et seq., permits consumers to bring private causes of
112  action against furnishers of information to credit reporting agencies who fail
113  to properly investigate disputed credit information.

114         Here, a telephone services provider opened phone service accounts
115  on behalf of third persons who fraudulently used the names of other
116  individuals. The provider subsequently enlisted the services of collection
117  agencies to satisfy the debts on the accounts. After being made aware of
118  the debts, the individuals whose names had been used notified the credit
119  reporting agencies of the fraud. After the individuals, collection agencies,
120  and credit reporting agencies notified the provider of the dispute, the
121  provider reportedly failed to investigate. The individuals sued the provider,
122  alleging, among other claims, that Defendant violated 1681s-2(b)(1) of the
123  FCRA by failing to properly investigate the disputed credit information.
124  Defendant moved to dismiss, arguing that plaintiffs lacked standing
125  because the FCRA does not create a private right of action for consumers.

126         Denying the motion, the court agreed with the U.S. Supreme Court's
127  analysis-set forth in Cort v. Ash, 95 S. Ct. 2080 (1975) for determining
128  whether an implied private right of action exists under a statute. The four
129  factors are: whether (1) the plaintiff is a member of a class for whose
130  benefit the statute was enacted; (2) the legislative history indicates
131  congressional intent, explicit or implicit, either to create or deny such a

132 remedy; (3) implying a private remedy would frustrate the underlying
133 purposes of the legislative scheme; and (4) the cause of action is one
134 traditionally relegated to state law.

135     May it please the Court: the Plaintiff has disputed with the Defendant
136 American General and the Credit Reporting Agencies in the same time
137 period and has attached proof to this Motion of these mailings via certified
138 mail to both the Defendant and the credit bureaus. The question is that
139 during the investigation did the Defendant "talk" to the Bureaus and vice
140 versa how does anyone know without proof? If the Defendant claims we did
141 an investigation this is hearsay no proof other than their statement. Why did
142 the Defendant not provide this alleged investigation information to the
143 Plaintiff after they had done their alleged investigation? Most likely if they
144 had it may have prevented this suit.

145

## FCRA PROVIDES PRIVATE CAUSE OF ACTION AGAINST FURNISHER OF INFORMATION

148     Gordon v. Greenpoint Credit, 266 F.Supp.2d 1007 (S.D.Iowa 2003)
149 and.
150 IN THE UNITED STATES DISTRICT COURT
151 FOR THE EASTERN DISTRICT OF PENNSYLVANIA
152 RICHARD L. SHEFFER, :
153 Plaintiff, : CIVIL ACTION: v.
154 EXPERIAN INFORMATION :
155 SOLUTIONS, INC., et al., : No. 02-7407
156 Defendants. :
157 MEMORANDUM AND ORDER
158 SCHILLER, J. February , 2003

6

159      In its motion, Sears contends that Plaintiff's claim under the FCRA
160  should be dismissed because consumers have no private right of action
161  against a credit furnisher under 15 U.S.C. § 1681s-2(b). In the alternative,
162  Sears argues that Mr. Sheffer's allegations are legally insufficient because
163  Plaintiff has failed to allege that a credit reporting agency has sent a
164  dispute verification form to Sears. Sears also moves for the dismissal of Mr.
165  Sheffer's defamation claim, arguing that the claim is preempted by the
166  FCRA.

167      With respect to the issue of whether § 1681s-2(b) creates a cause of
168  action for a consumer against a furnisher of credit information, Sears
169  correctly notes that courts have reached different conclusions. However, a
170  clear majority of courts that have addressed this issue has 'effectively
171  recognized Congress' obvious intent [to] create a private cause of action
172  through § 1681s-2."

173      Vazquez-Garcia v. Trans Union De P.R., Inc., 222 F. Supp. 2d 150,
174  155 (D.P.R. 2002); see also

175      Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1058 (9th
176  Cir. 2002) (describing purpose of § 1681s-2(b) as "provid[ing] some private
177  remedy to injured consumers"). The reasoning in support of the majority
178  view has been aptly summarized:

179      The civil liability sections, 15 U.S.C. § 1681n and 1681o, explicitly
180  provide a private right of action for consumers wishing to enforce any
181  provision of the Fair Credit Reporting Act against "any person" who either
182  "willfully fails to comply" or is "negligent in failing to comply." Absent any
183  explicit limitation, the plain language of 15 U.S.C. §§ 1681n, 1681o, 1681s-
184  2(b) and (c) provide a private right of action for a consumer against
185  furnishers of information who have willfully or negligently failed to perform

186 their duties upon notice of a dispute. Furthermore, the negative inference of
187 explicitly precluding a consumer's right of action for violations of § 1681s-
188 2(a) is that they are preserved in § 1681s-2(b). Accordingly, the plain
189 language of the Fair Credit Reporting Act compels the conclusion that there
190 is a private right of action for consumers to enforce the investigation and
191 reporting duties imposed on furnishers of information.

192 Defendant American General states that the Plaintiff Fails to State a
193 Claim upon which relief can be granted:

194 In considering a motion to dismiss for failure to state a claim upon
195 which relief can be granted, courts must accept as true all of the factual
196 allegations pleaded in the complaint and draw all reasonable inferences in
197 favor of the non-moving party. See Bd. of Trs. of Bricklayers & Allied
198 Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d
199 270, 272 (3d Cir. 2001).

200 Furthermore, a motion to dismiss will only be granted if it is clear that
201 relief cannot be granted to the Plaintiff under any set of facts that could be
202 proven consistent with the complaint's allegations.

203 See  Hishon v. King & Spalding, 467U.S. 69, 73 (1984) (citing Conley
204 v. Gibson, 355 U.S. 41, 45-46 (1957); Erickson, 127 S.Ct. at 2200.

205 In Erickson.....

206 In Erickson, the Supreme Court stressed the pro se status of the
207 plaintiff in Erickson — a far cry from the highly sophisticated antitrust
208 counsel in Bell Atlantic: The Court of Appeals' departure from the liberal
209 pleading standards set forth by Rule 8(a)(2) is even more pronounced in
210 this particular case because petitioner has been proceeding, from the
211 litigation's outset, without counsel.  A document filed pro se is " to be
212 liberally construed," Estelle [v. Gamble], 429 U.S. [97] at 106, 97 S.Ct. 285,

8

213  and "allegations such as those asserted by petitioner, however in artfully
214  pleaded, are sufficient to call for the opportunity to offer supporting
215  evidence. We cannot say with assurance that under the allegations of the
216  pro se complaint, which we hold to less stringent standards than formal
217  pleadings drafted by lawyers" HAINES V. KERNER, 404 U. S. 519 (1972),
218  and "a pro se complaint, however in artfully pleaded, must be held to less
219  stringent standards than formal pleadings drafted by lawyers," ibid. (internal
220  quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) (".... All pleadings
221  shall be so construed as to do substantial justice").

222  And Federal Rule of Civil Procedure 8(a)(2) requires only " a short
223  and plain statement of the claim showing that the pleader is entitled to
224  relief." Specific facts are not necessary; the statement need only "give the
225  Defendant fair notice of what the ...claim is and the grounds upon which it
226  rests." Bell Atlantic Corp. v. Twombly, 550 U.S. ----, ----, 127 S.Ct. 1955, ---
227  L.Ed.2d ----, ---- - ---- (2007) (slip op., at 7- 8) (quoting Conley v. Gibson,
228  355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

229  In addition, when ruling on a Defendant's motion to dismiss, a judge
230  must accept as true all of the factual allegations contained in the complaint.
231  Bell Atlantic Corp., supra, at 1955, 127 S.Ct. 1955 (slip op., at 8-9) (citing
232  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152
233  L.Ed.2d 1 (2002);

234  Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104
235  L.Ed.2d 338 (1989);

236  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40
237  L.Ed.2d 90 (1974)).

238  Erickson, 127 S.Ct. at 2200.

239  Summation:

240   The Plaintiff has disputed with the Furnisher/Defendant and the
241   Credit Bureaus in the same time frame certified mailings attached.

242   The OCC, Federal Reserve Board, FDIC, OTS, NCUA, and the FTC
243   (Agencies) issued a joint final rule (Final Rule) under Section 312 of the
244   Fair and Accurate Credit Transactions Act of 2003 (FACT Act), which
245   amends the Fair Credit Reporting Act (FCRA). Section 623 of the FCRA
246   describes the responsibilities of persons that furnish information about
247   consumers (furnishers) to credit reporting agencies (CRAs). The Final Rule
248   addresses the accuracy and integrity of reported information and
249   furnishers' responsibility to reinvestigate disputes based on direct disputes
250   from consumers. Furnishers are also required to establish policies and
251   procedures to implement the requirements.

252   **The Final Rule will become effective on July 1, 2010.**

253

254   **Policies and Procedures**

255   The Final Rule requires furnishers to establish and implement
256   reasonable written policies and procedures regarding the accuracy and
257   integrity of information about consumers furnished to a CRA. The policies
258   and procedures must be appropriate to the nature, size, complexity, and
259   scope of the furnisher's activities.

260   Furnishers must consider the accuracy and integrity guidelines (in the
261   Appendix of each Agency's regulation) in developing policies and
262   procedures. Furnishers must also review them periodically and update
263   them as necessary, but an audit requirement is not imposed. Not all of the
264   guidelines must be implemented.

265   According to the guidelines, furnishers' policies and procedures
266   should identify areas that compromise the accuracy or integrity of reported

267  information, evaluate the effectiveness of existing policies and procedures,
268  consider the need for changes, and evaluate the effectiveness of how
269  information is provided to CRAs, making changes as necessary.
270       The elements of a furnisher's policies and procedures should include
271  how consumer information is reported, maintaining records [1], maintaining
272  internal controls, training, oversight, furnishing consumer information in
273  connection with mergers and other transactions, data integrity, dispute
274  resolution, controls related to consumer reports furnished to CRAs,
275  conducting periodic evaluations of procedures, and complying with
276  applicable laws and regulations.
277
278                       **Key Definitions**
279       Accuracy. The term "accuracy" is defined as information that a
280  furnisher provides to a CRA about an account or other relationship with the
281  consumer that correctly:
282       •    reflects the terms of and liability for the account or other
283  relationship;
284       •    reflects the consumer's performance and other conduct with
285  respect to the account or other relationship; and
286       •    identifies the appropriate consumer.
287       The term "without error" was proposed but not included in the Final
288  Rule because it would imply such high standards that the Agencies feared
289  it might lead some persons to limit furnishing information to CRAs. The
290  adopted "correctly reflects" standard is intended to achieve a high degree
291  of accuracy without creating litigation risks.
292       Integrity. Information furnished to a CRA may be technically accurate
293  yet lack "integrity" because it presents a misleading picture of the

294   consumer's creditworthiness if critical information is omitted. The term
295   "integrity" is defined as information that a furnisher provides to a CRA about
296   an account or other relationship with the consumer that:

297   •   is substantiated by the furnisher's records at the time it is
298   furnished;

299   •   is furnished in a form and manner that is designed to minimize
300   the likelihood that the information may be incorrectly reflected in a
301   consumer report; and

302   •   includes the information in the furnisher's possession about the
303   account or other relationship that the relevant Agency has:

304   •   determined that the absence of which would likely be materially
305   misleading in evaluating a consumer's creditworthiness, credit standing,
306   credit capacity, character, general reputation, personal characteristics, or
307   mode of living; and

308   •   listed in section I.(b)(2)(iii) of the guidelines. (This section
309   provides one item on this list: the credit limit, if applicable and in the
310   furnisher's possession) [2].

311   Each Agency will determine, and list in its guidelines, the types of
312   information in a furnisher's possession that must be provided to promote
313   the integrity of the information. This list will be based on the Agency's
314   determination that the absence of the information would likely be materially
315   misleading. In the preamble to the Final Rule, the Agencies note that, as
316   furnishing information under the FCRA is voluntary, the definition of
317   integrity applies only to information that the furnisher elects to provide to a
318   CRA. The phrase "standardized and clearly understandable form" was
319   proposed but not included in the Final Rule, but this notion is included in
320   the guidelines.

321     Furnisher. The term "furnisher" means an entity that furnishes
322 information relating to consumers to one or more CRAs for inclusion in a
323 consumer report. An entity is not a furnisher when it:

324     •     provides information to a CRA solely to obtain a consumer
325 report;

326     •     is acting as a CRA (e.g., resellers);

327     •     is a consumer to whom the furnished information pertains (i.e.,
328 through self-reporting); or

329     •     is a neighbor, friend, or associate of the consumer, or another
330 individual with whom the consumer is acquainted or who may have
331 knowledge about the consumer, and who provides information about the
332 consumer's character, general reputation, personal characteristics, or
333 mode of living in response to a specific request from a CRA.

334     The last exception parallels the types of information that are collected
335 in connection with an investigative consumer report, and is deemed
336 necessary to avoid disrupting those activities.

337

338                    **Direct Dispute/Investigation**

339     A furnisher is now required to conduct a reasonable investigation if a
340 consumer directly disputes certain information contained in a consumer
341 report. "Direct dispute" means a dispute submitted directly to a furnisher
342 (including a furnisher that is a debt collector) by a consumer concerning the
343 accuracy of any information contained in a consumer report and pertaining
344 to an account or other relationship that the furnisher has or had with the
345 consumer. A furnisher is required to conduct a reasonable investigation if
346 the dispute relates to:

347   •   the consumer's liability for a credit account or other debt with
348 the furnisher, such as direct disputes relating to whether there is or has
349 been identity theft or fraud against the consumer, whether there is
350 individual or joint liability on an account, or whether the consumer is an
351 authorized user of a credit account;

352   •   the terms of a credit account or other debt with the furnisher,
353 such as direct disputes relating to the type of account, principal balance,
354 scheduled payment amount on an account, or the amount of the credit limit
355 on an open-end account;

356   •   the consumer's performance or other conduct concerning an
357 account or other relationship with the furnisher, such as direct disputes
358 relating to the current payment status, high balance, date a payment was
359 made, the amount of a payment made, or the date an account was opened
360 or closed; or

361   •   any other information contained in a consumer report regarding
362 an account or other relationship with the furnisher that bears on the
363 consumer's creditworthiness, credit standing, credit capacity, character,
364 general reputation, personal characteristics, or mode of living.

365   These provisions do not apply to a furnisher if the direct dispute
366 relates to:

367   •   the consumer's identifying information (other than a direct
368 dispute relating to a consumer's liability for a credit account or other debt
369 with the furnisher) such as name, date of birth, SSN, telephone number, or
370 address;

371   •   the identity of past or present employers;

372   •   inquiries or requests for a consumer report;

14

373      •     information derived from public records, such as judgments,
374 bankruptcies, liens, and other legal matters (unless provided by a furnisher
375 with an account or other relationship with the consumer);

376      •     information related to fraud alerts or active duty alerts; or

377      •     information provided to a consumer reporting agency by
378 another furnisher; or

379      •     the furnisher has a reasonable belief that the direct dispute is
380 submitted by, is prepared on behalf of the consumer by, or is submitted on
381 a form supplied to the consumer by, a credit repair organization [3].

382     Under any of these circumstances, the furnisher is not required to
383 investigate the dispute (and these circumstances render the dispute
384 "frivolous or irrelevant" as discussed below).

385     The consumer is required to submit a dispute notice to the furnisher:
386 (i) at the furnisher's address indicated by the furnisher on the consumer
387 report; (ii) at a location clearly and conspicuously specified by the furnisher
388 for submitting direct disputes provided in writing or electronically (if the
389 consumer has agreed to the electronic delivery of information from the
390 furnisher); or (if not provided as indicated above) at any business address
391 of the furnisher.

392     The dispute notice must include sufficient information to identify the
393 account or other relationship, the specific information in dispute together
394 with an explanation, and all supporting documentation or other information
395 reasonably required to substantiate the dispute. This may include a copy of
396 the disputed portion of the consumer report, a police report, affidavit, court
397 order; or account statements.

398     After receiving the notice, the furnisher must conduct a reasonable
399 investigation and review the relevant information provided. The

400  investigation must be completed and reported to the consumer within the
401  same period that a CRA is subject to under its reinvestigation duty (30 days
402  with a possible extra 15 days) [4]. If the investigation results in a finding
403  that the information reported was inaccurate, the furnisher must promptly
404  notify each CRA to which the furnisher provided the information and
405  provide any correction necessary to make the information accurate.

406       A furnisher is not required to investigate a direct dispute if the
407  furnisher has reasonably determined that the dispute is "frivolous or
408  irrelevant." This exception applies if the consumer did not provide sufficient
409  information to investigate the disputed information, or the furnisher had
410  previously handled the same dispute properly. (A direct dispute is not
411  substantially the same if it includes new information not included in the
412  earlier dispute). These examples are not intended to be exhaustive.

413

414       The furnisher must notify the consumer within five business days
415  after making a determination that a dispute is frivolous or irrelevant by mail
416  or (if authorized by the consumer for that purpose) by any other means
417  available to the furnisher. The notice must include the reasons for the
418  determination and identify any information required to investigate the
419  disputed information. It is allowable that the notice consist of a
420  standardized form describing the general nature of such information. The
421  Agencies note that the FTC, when it next updates its General Summary of
422  Consumer Rights, will include consumers' direct dispute rights in the
423  summary.

424

425

426

| | |
|---|---|
| 427 | **Guidelines** |
| 428 | Each of the Agencies provides an Appendix to its respective Final |
| 429 | Rule entitled, "Interagency Guidelines Concerning The Accuracy And |
| 430 | Integrity Of Information Furnished To Consumer Reporting Agencies." The |
| 431 | guidelines include more detailed procedures and guidance on all aspects of |
| 432 | the obligations in the Final Rule. In the preamble to the Final Rule, the |
| 433 | Agencies disclaim a "one-size-fits-all" approach requiring all furnishers to |
| 434 | implement all of the guidelines. As discussed, a furnisher's policies and |
| 435 | procedures should be appropriate to the nature, size, complexity, and |
| 436 | scope of its activities. |
| 437 | 1.      No specific retention period is prescribed in the Final Rule or |
| 438 | guidelines. Records must be kept for "a reasonable period of time, not less |
| 439 | than any applicable recordkeeping requirement, in order to substantiate the |
| 440 | accuracy of any information about consumers it furnishes that is subject to |
| 441 | a direct dispute. Guidelines Section III.c. |
| 442 | 2.      The Agencies consider that a key factor for evaluating |
| 443 | creditworthiness is credit utilization. Omission of a credit limit for an |
| 444 | account results in credit evaluators either ignoring credit utilization or using |
| 445 | a substitute measure for the credit limit, such as the highest balance, which |
| 446 | may result in a higher estimate of credit utilization. |
| 447 | 3.      The term is defined in 15 U.S.C. 1679a(3) as "any person who |
| 448 | uses any instrumentality of interstate commerce or the mails to sell, |
| 449 | provide, or perform (or represent that such person can or will sell, provide, |
| 450 | or perform) any service, in return for the payment of money or other |
| 451 | valuable consideration, for the express or implied purpose of—(i) improving |
| 452 | any consumer's credit record, credit history, or credit rating; or (ii) providing |
| 453 | advice or assistance to any consumer with regard to any activity or service |

described in clause (i)." For purposes of the Final Rule, the term also includes 501c-3 organizations that are credit repair organizations.

4.     The actual period is the limit set forth in 15 U.S.C. 1681i(a)(1) applicable to a consumer reporting agency's reinvestigation duty—that is, 30 days with a limited 15-day extension.

## Answer to Defendants Motions under TCPA against the Plaintiff state as follows:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement  of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the Defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. ----, ----, 127 S.Ct. 1955, --- L.Ed.2d ----, ---- - ---- (2007) (slip op., at 7- 8) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In addition, when ruling on a Defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Bell Atlantic Corp., supra, at 1955, 127 S.Ct. 1955 (slip op., at 8-9) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002);

Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989);

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Erickson, 127 S.Ct. at 2200.

The Defendant has stated that calls made to Plaintiff were permissible calls (23 calls in less than one month) and if they were made to

481  the Plaintiffs Cell Phone. The Plaintiff did not expand on this claim (under
482  227b and 227d) as the above rule is quite clear only "a short and plain
483  statement of the claim showing that the pleader is entitled to relief."

484      Of course this can all be determined once this action is moved to 26f
485  to determine if the callers are robo/automated calls or if they were actually
486  made by "humans" who actually exist and if the Defendant has/had
487  permission to call the Plaintiffs number. So far we only have hearsay on
488  this issue based on the Defendants statements in their Motion to Dismiss.
489  No facts have been brought forth regarding any type of
490  business/contractural relationship existing to allow unsolicited phone calls
491  from the Defendant.

492      However the Plaintiff believes these issues fall under section 227b
493  and or 227d of the TCPA. Also words such as Harassment, Intimidation
494  and Dunning do fit into this picture based on the Defendants actions and
495  the Plaintiff believes that a jury who would see or be made aware of these
496  actions of the Defendant may very well agree with the Plaintiffs claims.

497

498                          **Conclusion**

499      WHEREFORE, in consideration of all reasons outlined in
500  Plaintiff's Motion in Opposition to Defendants American General Motion to
501  Dismiss, Plaintiff respectfully moves this Honorable Court to deny
502  Defendants Motion to Dismiss and set these proceedings to Rule 16 and or
503  26f.

504
505
506
507  Respectfully submitted this 26th day of October, 2010.

19

*Timothy Paul Harris*

Timothy P. Harris
4005 Cherokee Rose Ave
North Las Vegas, NV 89031
702-371-3658
extremeps1@cox.net

## CERTIFICATE OF SERVICE

I, the Plaintiff, Timothy Harris does hereby certify that a copy of the Opposition to Dismiss was sent to the Defendant  American General Financial Services Of America, Inc. through their attorney of record Fennemore Craig, P.C., David W. Dachelet, Esq., Nevada Bar No. 6615, 300 South Fourth Street, Suite 1400, Las Vegas, Nevada 89101for the purpose of satisfying the requirement for Notice and Service and was sent via E-mail to the attorney and  USPS Certified Mail Return Receipt pursuant to Federal Rules of Civil Procedure 4 (c) (2) (c) (i). This will also be available to any and all PACER ECF participants and will serve as Notice and Service.

*Timothy Paul Harris*

Timothy P. Harris
4005 Cherokee Rose Ave
North Las Vegas, NV 89031
702-371-3658
extremeps1@cox.net

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

Timothy P. Harris  )
    Plaintiff, *ProSe'*  )
                                  )      Case No.: 2:10-cv-01662-GMN-LRL

V.  )

                                  )      **TRIAL BY JURY DEMANDED**

American General Financial  )
Services, LLC, Defendant  )

## AFFIDAVIT

Comes now the Plaintiff and states as follow:

Attached to the Opposition to Motion to Dismiss are the certified copies of USPS mailings to the Defendant in the above captioned case. These are copies of the true and original documents addressed in the Plaintiffs complaint and show the dates and times of contact with the Defendant and the Plaintiffs' Contact with the credit bureaus.

Sworn to under penalty of perjury:

This 26th day of October, 2010

                                          Timothy P. Harris, Plaintiff

Subscribed and sworn before me a Notary Public, of the state of NEVADA, County of Clark, this 26th day of October, 2010, that the above person did appear before me and was identified to be the person executing this document.

Notary Public _____

My Commission expires on: _____



NOTARY PUBLIC
STATE OF NEVADA
County of Clark
PATRICK LOGAN
No. 03-79892-1
My Appointment Expires Jan. 7, 2011

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing Affidavit vs. American General Financial Services of America Inc., has been served upon the Defendant American General Financial Services Of America, Inc. through their attorney of record Fennemore Craig,

P.C., David W. Dachelet, Esq., Nevada Bar No. 6615, 300 South Fourth Street, Suite 1400, Las Vegas, Nevada 89101 for the purpose of satisfying the requirement for Notice and Service and was sent via E-mail to the attorney and USPS Certified Mail Return Receipt pursuant to Federal Rules of Civil Procedure 4 (c) (2) (c) (i). This will also be available to any and all PACER ECF participants and will serve as Notice and Service.

Timothy P. Harris, Plaintiff
4005 Cherokee Rose Ave.
North Las Vegas, NV 89031
702-371-3658
extremeps1@cox.net

## Receipt 1

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

LOS ANGELES CA 90054

| | | |
|---|---|---|
| Postage | $ $0.44 | 0094 |
| Certified Fee | $2.80 | 11 |
| Return Receipt Fee (Endorsement Required) | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $5.54 | 06/17/2010 |

Sent To: *American General Finance*
Street, Apt. No.; or PO Box No. *P.O. Box 54290*
City, State, ZIP+4 *Los Angeles, CA 90054-0290*

PS Form 3800, August 2006 — See Reverse for Instructions

7009 3410 0001 0346 7841

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*American General Finance*
*P.O. Box 54290*
*Los Angeles, CA 90054-0290*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name) *Cesar S*   C. Date of Delivery JUN 20 2010

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 3410 0001 0346 7841

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

## Receipt 2

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

ALLEN TX 75013

| | | |
|---|---|---|
| Postage | $ $0.44 | 0094 |
| Certified Fee | $2.80 | 09 |
| Return Receipt Fee (Endorsement Required) | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $5.54 | 06/21/2010 |

Sent To: *Experian - AG*
Street, Apt. No.; or PO Box No. *P.O. Box 2002*
City, State, ZIP+4 *Allen, TX 75013*

PS Form 3800, August 2006 — See Reverse for Instructions

7009 3410 0001 0346 8053

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Experian*
*P.O. Box 2002*
*Allen, TX 75013*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 3410 0001 0346 8053

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Pro...)*

For delivery information visit our website at www.usps...

ATLANTA GA 30374

| | | | |
|---|---|---|---|
| Postage | $ | $0.44 | 0094 |
| Certified Fee | | $2.80 | 09 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | JUN 21 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $5.54 | 06/21/2010 |

Sent To   *Equifax - AG*
Street, Apt. No.; or PO Box No.   *P.O. Box 740241*
City, State, ZIP+4   *Atlanta GA 30374*

PS Form 3800, August 2006          See Reverse

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Equifax*
*P.O. Box 740241*
*Atlanta, GA 30374*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by ( Printed Name)       C. Date of Delivery
   JUN 2 4 2010

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7009 3410 0001 0346 8091

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage P...)*

For delivery information visit our website at www.usp...

CRUM LYNNE PA 19022

| | | | |
|---|---|---|---|
| Postage | $ | $0.44 | 0094 |
| Certified Fee | | $2.80 | 09 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $5.54 | 06/21/20... |

Sent To   *Trans Union - AG*
Street, Apt. No.; or PO Box No.   *P.O. Box 1000*
City, State, ZIP+4   *Chester, PA 19022*

PS Form 3800, August 2006          See Reverse

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Trans Union*
*P.O. Box 1000*
*Chester, PA 19022*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by ( Printed Name)       C. Date of Delivery
   TransUnion LLC

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No
   JUN 2 4 2010

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service l...    7009 3410 0001 0346 8060

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-15...